IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JILL WILLIAMS, et al. | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil No. JFM 07-3459 |
| | * | |
| SANDRA LONG, | * | |
| | * | |
| Defendant. | * | |
| | ***** | |

**MEMORANDUM OPINION**

Plaintiffs Jill Williams and Erin Dechowitz, on behalf of themselves and others similarly situated, have brought a collective action against defendant Sandra Long, owner of Charm City Cupcakes, under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq*. Plaintiffs allege that defendant willfully violated 29 U.S.C. § 206 and section 7(a)(1) of FLSA by failing to pay plaintiffs minimum wage and overtime. (Compl. ¶¶ 18-19.) Further, plaintiffs allege that defendant's actions also violated Baltimore City's Wage and Hour Law (Baltimore City Code Art. 11, §§ 3-1, 3-3) and Maryland's Wage Payment and Collection Law (Maryland Labor and Employment Art. § 3-501 *et seq.*). (*Id.* ¶¶ 20-26.) Defendant has brought counterclaims alleging breach of contract, breach of fiduciary duty, and invasion of privacy. (Def.'s Countercl. ¶¶ 20-40.) Plaintiffs have moved to dismiss defendant's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that this Court does not have supplemental jurisdiction over the counterclaims under 28 U.S.C. § 1367. (Pls.' Mot. to Dismiss at 1.) For reasons that follow, I will grant plaintiffs' motion to dismiss.

I.

The facts, as alleged in plaintiffs' complaint, are as follows.  From October 2007 through November 2007, plaintiffs at various times were employed by defendant to prepare, bake, and serve cupcakes at defendant's business establishment or at the site of customers.  (Compl. ¶ 11.) Defendant promised plaintiffs Williams and Dechowitz that they would receive an hourly wage of $15.00 per hour and $6.25 per hour, respectively.  (*Id.*)  Despite working "a couple hundred hours" between them - including overtime - the only wage that either of these plaintiffs received was $20.00, which defendant gave Dechowitz as a cash advance against her pay.  (*Id.* ¶¶ 11, 13.) Defendant has refused to pay any wages to plaintiffs.  (*Id.* ¶ 16.)

II.

In cases such as this one, where neither diversity nor federal question jurisdiction exists over defendant's counterclaims, the counterclaims' status as "compulsory" or "permissive" determines whether the court has jurisdiction over them.  *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988).  A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," while a permissive counterclaim does not.  *See* Fed. R. Civ. P. 13(a)-(b).  Accordingly, a compulsory counterclaim is "within the ancillary jurisdiction of the court to entertain and no independent basis of federal jurisdiction is required." *Painter*, 863 F.2d at 331.  By contrast, a permissive counterclaim that lacks its own independent jurisdictional basis is not within the jurisdiction of the court.[1]  *Id.*

---

[1] This result follows from the Fourth Circuit's reasonable conclusion that Fed. R. Civ. P. 13's requirement that the claim and counterclaim "arise[] out of the [same] transaction or occurrence" is equivalent to 28 U.S.C. § 1367(a)'s requirement that the claim and counterclaim be "so related . . . that they form part of the same case or controversy under Article III of the United States Constitution."  In other words, if a court determines that a counterclaim that lacks an independent jurisdictional basis did not arise from the same transaction as the original federal claim (and thus is not compulsory), it is also concluding that the claim and counterclaim did not "derive from

The Fourth Circuit has suggested four inquiries to determine if a counterclaim is compulsory:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?

*Id.* (citing *Sue & Sam Mfg. Co. v. B-L-S Constr. Co*, 538 F.2d 1048, 1051-53 (4th Cir. 1976)). *Painter* explained that a court need not answer all of these questions in the affirmative for the counterclaim to be compulsory. Instead, the tests "are less a litmus, more a guideline." *Id.* Because I answer these four questions in the negative, I conclude that defendant's counterclaims are permissive, and thus must be dismissed.

## A.

I find that the issues of fact and law raised in the claims and counterclaims are not "largely the same." *Painter*, 863 F.2d at 331. Plaintiffs have brought claims alleging that defendant violated FLSA, Maryland's Wage Payment and Collection Law, and Baltimore City's Wage and Hour Law by not paying plaintiffs minimum wage and overtime for their work at Charm City Cupcakes. (Compl. ¶¶ 18-26.) By contrast, Long's counterclaims assert breach of contract, breach of fiduciary duty, and invasion of privacy. (Def.'s Countercl. ¶¶ 20-40.) Specifically, Long alleges that after plaintiff Williams "made false representations with respect to her background and experiences" in the baked goods industry, Long contracted with Williams

---

a common nucleus of operative fact" (and thus that the court lacks supplemental jurisdiction over the counterclaim). *See City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997) (holding that 28 U.S.C. § 1367(a) codified the principle that federal and state law claims which arise from common nucleus of operative facts constitute a single case).

to become "joint venture working partner[s]."[2] (*Id.* ¶¶ 3-16.) Further, Long allegedly obtained "a substantial amount of working capital and capital financing" in reliance upon Williams' "false representations." (*Id.* ¶ 11.) Accordingly, when Williams "walked away from the business," she allegedly breached the contract and her fiduciary duty to Long, causing Long damages in excess of $500,000. (*Id.* ¶¶ 20-29.) Long also alleges that by filing the Complaint and "leaking it to the media for subsequent publication," plaintiffs invaded her privacy and demonstrated "a total disregard for the truth." (*Id.* ¶¶ 30-40.) Long requests damages in excess of $500,000 for the alleged embarrassment, humiliation, loss of prestige, and emotional distress that plaintiffs caused by "placing her in a false light." (*Id.* ¶¶ 35-40.)

The only issue that arises in both the claims and counterclaims is whether plaintiff Williams was an employee (as plaintiffs allege) or a joint venture partner (as defendant alleges). In every other respect, the claims and counterclaims differ in terms of the legal and factual issues they raise. The legal issues raised by a minimum wage and overtime laws are clearly distinct from those raised by the laws of breach of contract, breach of fiduciary duty, and invasion of privacy. Likewise, while plaintiffs' claims will focus on the factual issues of how many hours plaintiffs worked, and whether they were paid for that work, defendant's counterclaims would require extensive factual investigation into allegations of false representation, reliance, and emotional distress that defendant alleges caused her over $500,000 in damages.

Federal courts have been reluctant to exercise supplemental jurisdiction over state law claims and counterclaims in the context of a FLSA suit where the only connection is the

---

[2] With respect to plaintiff Dechowitz, Long contends that "[t]he understanding of the parties was that [Dechowitz] would be working as an independent contractor for approximately three (3) weeks." (Def.'s Countercl. ¶ 17.) In addition, Long asserts that Dechowitz did not work a forty hour week and did not work overtime. (*Id.* ¶¶ 18-19.)


employee-employer relationship.  As Judge Vratil of the United States District Court for the District of Kansas has stated, "[s]everal courts have rejected the notion that the employer-employee relationship single-handedly creates a common nucleus of operative fact between the FLSA claim and peripheral state law claims."  *Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465, 2008 WL 640733, at *3 (D. Kan. March 6, 2008) (citing *Lyon v. Whisman*, 45 F.3d 758, 762-64 (3d Cir. 1995) (where the employment relationship is the only link between the FLSA claim and state law claims, no common nucleus of operative fact exists and Article III bars supplemental jurisdiction); *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 395 (E.D.N.Y. 2007) (an employment relationship is insufficient to create common nucleus of operative fact where it is the sole fact connecting the FLSA claim to state law claims); *Hyman v. WM Fin. Servs., Inc.*, No. 06-CV-4038, 2007 WL 1657392, at *5 (D.N.J. June 7, 2007) (exercising supplemental jurisdiction over state law claims unrelated to the FLSA claim "would likely contravene Congress's intent in passing FLSA"); *Whatley v. Young Women's Christian Assoc. of Nw. La., Inc.*, No. 06-423, 2006 WL 1453043, at *3 (W.D. La. May 18, 2006) (a general employer-employee relationship does not create a common nucleus of operative fact between the FLSA claim and state claims)).

     *Wilhelm*, 2008 WL 640733, at *3,  and *Kirby v. Tafco Emerald Coast Inc.*, No. 3:05CV341, 2006 WL 228880 (N.D. Fla. Jan. 30, 2006), provide strong support for dismissing Long's counterclaims.  In both cases, defendants responded to plaintiffs' FLSA minimum wage and overtime claims with counterclaims based on state law: breach of fiduciary duty, breach of the duty of loyalty, and misappropriation of trade secrets in *Wilhelm*, and breach of contract and non-payment of a promisory note in *Kirby*.  *Wilhelm*, 2008 WL 640733, at *1; *Kirby*, 2006 WL

228880, at *1.  In both cases, the courts granted plaintiffs' motion to dismiss defendants' counterclaims because they did not share a common nucleus of operative fact with plaintiffs' FLSA claims.  *Wilhelm*, 2008 WL 640733, at *3; *Kirby*, 2006 WL 228880, at *2.  *Wilhelm* dismissed the counterclaims "[b]ecause defendant relie[d] solely on its employer-employee relationship with plaintiffs to support supplemental jurisdiction, and [did] not identify a more specific factual connection between its counterclaims and plaintiffs' FLSA claim . . . ."  *Wilhelm*, 2008 WL 640733, at *3.  Likewise, *Kirby* found that while "[t]he FLSA claims deal[t] only with the question of the number of hours worked and the compensation paid[,]" the state counterclaims "necessarily involve[d] different and separate factual matters."  *Kirby*, 2006 WL 228880, at *2.

Just as in *Wilhelm* and *Kirby*, I find the factual and legal issues raised by plaintiffs' claims and Long's counterclaims not "largely the same."  *Painter*, 863 F.2d at 331.

<div style="text-align:center">B.</div>

Defendant contends that res judicata "is a likely bar to the assertion of Defendant's counterclaim[s] in a subsequent proceeding in state court."  (Def.'s Opp'n at 4.)  Under Maryland law, the doctrine of res judicata, or claim preclusion, bars the relitigation of a claim if (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the subsequent action is "identical to that determined or that which could have been raised and determined in the prior litigation"; and (3) there was a final judgment on the merits in the prior litigation.  *R&D 2001 LLC v. Rice*, 938 A.2d 839, 848 (Md. 2008).

I find that none of defendant's counterclaims would be barred by claim preclusion in a

subsequent state court action. The first and third prongs above would almost certainly be satisfied because the parties in a subsequent action would be the same, and there presumably would have been a final judgment on the merits. However, the second prong would not be met because defendant's counterclaims are not identical to plaintiffs' claims, and by definition, "could [not] have been raised and determined in the prior litigation" if I had dismissed them in that prior litigation. *Rice*, 938 A.2d at 848.

The Fourth Circuit has in at least two cases also considered collateral estoppel, or issue preclusion, as part of this second inquiry.[3] *See Painter*, 863 F.2d at 332 (affirming district court's finding that issue preclusion could prove to be a bar); *Sue & Sam Mfg. Co.*, 538 F.2d at 1052 (holding that a judgment on the issue of the third-party plaintiff's negligence "would have barred a subsequent suit . . . on that issue, if not on the grounds of *res judicata*, then on the grounds of estoppel by judgment, or collateral estoppel, or related doctrines, however called"). Analytically, it is not clear to me, particularly in the instant case, that issue preclusion should be considered as part of this second inquiry. I recognize that because Long's breach of contract and breach of fiduciary duty counterclaims depend on whether Williams was an employee or a joint venture partner, a finding that Williams was an employee in the instant suit might very well bar Long's two counterclaims in a subsequent suit.[4] However, Long will have had every incentive to

---

[3] However, some federal district courts in the Fourth Circuit have limited the second inquiry to claim preclusion. *See, e.g., Varnell, Struck & Assocs., Inc. v. Lowe's Cos.*, Nos. 5:06cv068, 5:07cv104, 2008 WL 1820830, *7 (W.D.N.C. April 21, 2008); *Banner Indus. of N.Y., Inc. v. Sansom*, 830 F. Supp. 325, 328 n.4 (S.D.W.Va. 1993).

[4] The Maryland Court of Appeals has articulated the doctrine of issue preclusion in the following way: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, . . . the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Rice*, 938 A.2d at 848-49. In the instant case, the issue of Williams' position at Charm City Cupcakes would be identical to the one presented in state court, there would have been a final judgment on the merits, and the parties in both actions would be the same. *See id.* at 849.

fully litigate the issue, not only to prevent a judgment against her in the instant suit and avoid a bar in the subsequent suit, but also because if I were to find that Williams was a joint venture partner, Long could enforce this finding offensively in a subsequent suit against plaintiff. Accordingly, requiring Long to bring her counterclaims in a subsequent suit will allow the instant suit to proceed more efficiently without creating any inefficiency or unfairness in the subsequent suit.

C.

I conclude that substantially the same evidence will not support or refute the claims and counterclaims. Plaintiffs' FLSA and state claims will rely on evidence demonstrating defendant's agreement to pay plaintiffs, plaintiffs' hours worked, and defendant's refusal to pay plaintiffs. As already made clear from the exhibits plaintiffs have attached to their briefs, this evidence will consist of e-mails, time sheets, and similar documents. In contrast, defendant's counterclaims will rely on almost completely different evidence, with the lone exception of the issue of Williams' status as an employee or joint venture partner. Otherwise, the evidence surrounding defendant's counterclaims will presumably include Williams' resume; documentation of defendant's investments and financing in reliance on Williams' alleged false representations; documentation of and testimony about defendant's alleged financial losses as a result of Williams' voluntary termination; and testimony about the emotional damage to defendant caused by the publication of plaintiffs' allegations. Accordingly, unlike the situation in *Painter* - where all the evidence focused on "a single factual issue - what transpired during [plaintiff's] arrest" - here the evidence supporting (and refuting) the claims and counterclaims will be significantly different. 863 F.2d at 332.

D.

Finally, I conclude that there is no "logical relationship" between the claims and counterclaims. As discussed above, numerous federal courts have refused to exercise supplemental jurisdiction over counterclaims to a FLSA claim that depend on the "employer-employee relationship" to "single-handedly create[] a common nucleus of operative fact . . . ." *Wilhelm*, 2008 WL 640733, at *3. Here, the only connection between the claims and counterclaims is the issue of Williams' status as an employee. Just as in the many FLSA cases cited *supra* - and in contrast to *Painter* - plaintiffs' claims and defendant's counterclaims do not relate to one event or issue. *See Painter*, 863 F.2d at 331-32. Instead, while plaintiffs' claims seek minimum wage and overtime payments for the hours plaintiffs allegedly worked, Long's counterclaims seek compensation for financial and emotional damages allegedly caused by Williams' voluntary termination and plaintiffs' publication of its Complaint.

For the foregoing reasons, I conclude that defendant's counterclaims are permissive, and accordingly grant plaintiffs' motion to dismiss.[5] A separate order to that effect is being entered herewith.

Date:   June 11, 2008                           /s/_____
                                                J. Frederick Motz
                                                United States District Judge

---

[5] Because I conclude that this Court lacks subject matter jurisdiction over the proposed counterclaims, it is not necessary for me to address plaintiffs' motion for Rule 11 sanctions. *See, e.g., Shamblin v. City of Colchester*, 793 F. Supp. 831, 834 n.2 (C.D. Ill. 1992) (concluding the same). Nevertheless, I find that defendant's counterclaims did not violate Rule 11's requirements that a motion not be "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," and that "the allegations and other factual contentions . . . are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P. 11(b). At this stage, it cannot be determined that further discovery will not provide support for defendant's contention that Williams was a joint venture partner, and thus breached her contract and fiduciary duties by voluntarily leaving the business.